IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2016

**STATE OF TENNESSEE v. DANIELLE RUSH**

**Appeal from the Criminal Court for Shelby County**
**No. 14-00784     J. Robert Carter, Jr., Judge**

_____

**No. W2015-01980-CCA-R3-CD  -  Filed July 15, 2016**
_____

The defendant, Danielle Rush, was convicted by a Shelby County Criminal Court jury of two counts of attempted second degree murder, three counts of aggravated assault, two counts of reckless endangerment, and vandalism over $1000.  The trial court merged two of the aggravated assault convictions and sentenced the defendant to an effective term of eleven years in the Department of Correction.  On appeal, he argues that the evidence is insufficient to sustain his convictions.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal); Arthur Benjamin Baker and Robert H. Gowen (at trial), Assistant Public Defenders, for the appellant, Danielle Rush.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris West and Gavin Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The defendant was indicted for attempted first degree murder, attempted second degree murder, four counts of aggravated assault, vandalism over $10,000,[1] and two counts of reckless endangerment[2] as a result of his driving his truck toward his girlfriend, members of his girlfriend's family, and others nearby.

### State's Proof

Rhonda Alexander[3] testified that she and the defendant were in a relationship around the time period of August 24, 2013, although they were both married to other people. On that day, Ms. Alexander told the defendant that she did not want him to stay with her at her residence in the Highland Meadows Apartments anymore. The defendant replied that he wanted to come over and "straighten up his business," but she told him that he was not welcome there. However, the defendant came anyway, driving aggressively into her apartment complex.

When the defendant arrived, Ms. Alexander was standing in the breezeway by her apartment. Three other people were outside with her: her teenage son, Christian Alexander; her daughter, Tamika Cook; and a neighbor. At some point, Mr. Alexander fell to the ground, and Ms. Alexander exclaimed to the defendant, "Don't you run over my damn child." Ms. Alexander was standing on the curb at the time.

Ms. Alexander testified that the defendant hit her with his vehicle. She lay on the ground for a while and then got up and started running toward her apartment. The defendant chased her and hit her again two times. She finally made it to her apartment but could not get in the door. On the advice of a neighbor, she lay down by the mailbox to avoid getting struck again, but the defendant drove his vehicle through the breezeway between the apartments.

Ms. Alexander suffered a broken arm and dislocated left knee and right ankle, requiring a permanent rod, plate and pin, respectively. She was hospitalized for three

---

[1] The charge was amended to vandalism in an amount between $1000 and $10,000 before the start of trial.

[2] One count of reckless endangerment was nolle prosequied.

[3] Because there are a number of victims in this case, some sharing the same surname, we will refer to all of the victims by name.

2

weeks, and it was several months before she could walk again. Pain persisted after the incident.

Regina Goffney lived in the Highland Meadows Apartments at the time of the incident. Ms. Goffney saw the defendant driving through the apartment complex "like somebody was out of control." Ms. Goffney saw the defendant when he "rammed [Ms. Alexander] up into the tree, and she fell back down on the truck." She also saw when the defendant "ran into the building across from [Ms. Alexander's] building, and when he ran . . . up under the staircase and he ran [Ms. Alexander] over, and he knocked Mr. Jones out of his chair."

Burrell Jones lived in a ground floor apartment at the Highland Meadows Apartments across from Ms. Alexander at the time of the incident. He was seated in a recliner in his apartment talking on the telephone when the wall behind him caved in. The blow knocked him out of his chair onto the floor, injuring his wrist and back. He heard Ms. Alexander screaming outside. Mr. Jones was rushed to the hospital because his heart "went into AFib" and, as a former open-heart surgery patient, he needed to be monitored overnight to ensure his heart returned to a normal rhythm.

Mark Hale, an employee of the Highland Meadows Apartments' leasing office, testified that it cost around $8000 to repair the damage done to the apartment buildings.

Christian Alexander, Ms. Alexander's son, was living with his mother at the Highland Meadows Apartments at the time of the incident. He went outside the apartment after speaking with a neighbor and saw his mother arguing on the telephone with the defendant. Mr. Alexander talked to the defendant also, and the defendant told him that he was "going to come over [to] my house and shoot my apartment up." Mr. Alexander told the defendant not to come over.

Mr. Alexander was standing on the patio when the defendant pulled into the drive. When he saw the defendant pull in, he ran into the street and waited for the defendant to come back around the corner in order to confront him. Mr. Alexander tried to hit the defendant in the face but missed because the defendant "just kept going." At some point, Mr. Alexander fell trying to get away from the defendant, who was chasing him. He got back up and started running again. Mr. Alexander ran through the breezeway to the other side of the building where he saw the defendant run over his mother four times.

Tamika Cook, Ms. Alexander's daughter, also lived in the Highland Meadows Apartments at the time of the incident, albeit in a different apartment than her mother and brother. On that day, Ms. Cook was preparing to leave the complex to pick up her son when she saw Mr. Alexander in her rear-view mirror, standing in the middle of the street

and the defendant chasing, and appearing to hit, Mr. Alexander with his truck. Ms. Cook went back to talk to her mother to see what was going on. She saw the defendant maneuver his truck as though he was getting ready to come toward her and her mother. She thought the defendant was going to hit her with his truck. She told her mother to go into her apartment. Ms. Cook saw the defendant hit her mother and hit "an apartment." When the defendant hit Ms. Alexander, she "went through the apartment and she flipped over the truck and hit her head on that tree." After hitting Ms. Alexander, the defendant "backed outside the hole" he had made into an apartment and "went towards the breezeway" in his truck. Ms. Alexander got up and ran through the breezeway, and the defendant followed her. Ms. Alexander was crying and screaming for help.

Dennis Alexander,[4] a fellow resident of the Highland Meadows Apartments, witnessed the altercation. He recalled that, when the defendant arrived to the apartment complex, "[i]t was all right at first, and then as Christian [Alexander] started to get in the way and agg [the defendant] on, this and that, . . . and that's when everything got run out of proportion." He saw Christian Alexander "[s]wing" at the defendant. After that, he saw Ms. Alexander "ke[ep] getting hit" by the defendant's truck.

The remainder of the State's proof consisted of testimony from two patrol officers who detained the defendant while en route to the scene, and a crime scene officer regarding his taking photographs of the scene.

**Defendant's Proof**

Tamara Rush, the defendant's wife, testified that she taught the defendant how to drive in 1998 or 2001. She said that the defendant has eye problems and cannot see without glasses. Bryana Rush, the defendant's daughter, testified that in 2013, she lived in Memphis for the summer, alternating between staying with the defendant and Ms. Alexander and her grandfather. She was not at the Highland Meadows Apartments on August 24, 2013, having already returned to New York where she lived with her mother.

James Glover Wright, an assistant public defender, testified that he measured the distance across the drive of the apartment complex as being seventy-five feet.

The defendant testified that he and Ms. Alexander entered into a relationship in November 2010, and their relationship was on-again-off-again until August 24, 2013. In June 2013, they moved in together at the Highland Meadows Apartments. They broke up again four days before the incident in this case. On August 24, 2013, the defendant went to the apartment complex to give Ms. Alexander rent money, a key card, and door key,

---

[4] Dennis Alexander is not related to Rhonda or Christian Alexander.

4

per her request. He said that the entrance gate was open when he arrived, so he drove on in. He agreed that he drove too fast coming into the complex, explaining that he "was upset." When he got to the back parking lot and got out to try to open the back of his truck to get his belongings, Ms. Alexander, Mr. Alexander, and seven or eight other people were standing there. The defendant claimed that Mr. Alexander said, "Y'all, get him," and the people started chasing him. He ran back to his truck and tried to leave the apartment complex "before they hurt" him. He denied hitting anyone with his truck.

The defendant testified that Mr. Alexander came up beside his truck and punched him in the face, causing his glasses to fly out the window. He said that he began to panic and tried to get away but had difficulty without his glasses. He was unable to see Ms. Cook in his path until the last second and inadvertently hit Ms. Alexander when he swerved to avoid hitting Ms. Cook or an oncoming car. He did not see Ms. Alexander until he hit her. He said that he then accidentally hit the apartment building and hit his face on the steering wheel when he did so. He sat in his truck "kind of dazed," while the men that were with Mr. Alexander reached into the truck "trying to . . . get at [him]." He tried to drive through the breezeway to escape, but the mob blocked him. When he finally got out of the apartment complex, he parked on the street and waited for the police. He did not attempt to run from the police because he wanted to tell his side of the story. The defendant denied trying to hit Mr. Alexander, Ms. Alexander, or Ms. Cook with his vehicle.

The defendant denied ever telling the police that Ms. Alexander had told him not to come over. He did not recall telling the police that only three other people were present during the assault. However, he did recall telling police that he "put the car in reverse and . . . tried to hit [Mr. Alexander and another individual] . . . trying to scare them so he would get out of my way."

Dr. James Freeman, an ophthalmologist, testified that he had reviewed the defendant's ophthalmology records which showed that the defendant is "very near-sighted, has an astigmatism and has glaucoma." Dr. Freeman opined that the defendant's glaucoma "ha[d] not seriously affected his vision" at that point but that the near-sightedness and astigmatism did affect his vision. He said the defendant is legally blind when he does not wear his glasses, but Dr. Freeman admitted that he did not know if the defendant was wearing his glasses at the time of the incident. Dr. Freeman agreed that "legally blind" did not mean that the defendant "can't see anything."

Following the conclusion of the proof, the jury convicted the defendant of the lesser-included offense of the attempted second degree murder of Rhonda Alexander; attempted second degree murder of Christian Alexander; two counts of aggravated assault of Rhonda Alexander under different theories; aggravated assault of Christian

5

Alexander; the lesser-included offense of reckless endangerment of Tamika Cook; reckless endangerment of Burrell Jones; and vandalism over $1000.

## ANALYSIS

On appeal, the defendant argues that the evidence is insufficient to sustain any of his convictions. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

### I. Attempted Second Degree Murder

In Counts 1 and 2, the defendant was convicted of the attempted second degree murders of Rhonda Alexander and Christian Alexander. Second degree murder is a knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1). In cases where the defendant has been charged with the attempted commission of a crime, there must be

evidence that the defendant acted "with the kind of culpability otherwise required for the offense" and acted "with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward commission of the offense." Id. § 39-12-101(a)(3).

In the light most favorable to the State, the evidence shows that the defendant intentionally chased after Mr. Alexander with his truck and unsuccessfully attempted to hit him. The defendant intentionally chased after Ms. Alexander with his truck as well but successfully struck her several times and caused her injury. The defendant did this after making explicit and implicit threats. The defendant essentially asks us to reweigh the credibility of the witness; however, assessing the credibility of the witnesses is in the province of the jury. The evidence is sufficient for a rational trier of fact to find the defendant guilty of the attempted second degree murders of Mr. Alexander and Ms. Alexander.

## II. Aggravated Assault

In Count 3, the defendant was convicted of the aggravated assault of Rhonda Alexander by causing serious bodily injury and, in Count 4, by the use of a deadly weapon causing fear of imminent bodily injury. The trial court merged these two counts of aggravated assault involving Rhonda Alexander into one conviction. In Count 5, the defendant was convicted of the aggravated assault of Christian Alexander by the use of a deadly weapon and causing fear of imminent bodily injury.

A person commits assault when he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a)(1), (2). A person commits aggravated assault who "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault . . . [r]esults in serious bodily injury to another; [or] [i]nvolved the use or display of a deadly weapon[.]" Id. § 39-13-102(a)(1)(A)(i), (iii). Serious bodily injury is defined as bodily injury involving a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement, protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. Id. § 39-11-106(a)(34). A motor vehicle can constitute a deadly weapon. State v. Tate, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995).

As to the counts involving Ms. Alexander, one by virtue of causing serious bodily injury and the other by virtue of causing reasonable fear of imminent bodily injury and using a deadly weapon, the proof showed that the defendant used his vehicle to ram into Ms. Alexander several times, injuring her severely and causing her to attempt to hide out

of fear of being hurt even worse.  She sustained serious bodily injury in that she suffered a broken arm, dislocated left knee, and dislocated right ankle.  It was several months before she could walk again, and pain persisted long after the incident.

As to the count involving Mr. Alexander, causing reasonable fear of imminent bodily injury and using a deadly weapon, the proof showed that the defendant drove his vehicle at Mr. Alexander, who fell while trying to get away but was able to get up and run away.  Mr. Alexander specifically testified that he was scared when the defendant was driving toward him.

In the light most favorable to the State, the evidence is sufficient to sustain the defendant's convictions for aggravated assault.  The defendant posits that "the testimony related to the actions of the defendant on this issue lacks all credibility"; however, assessing the credibility of the witnesses is in the province of the jury.

### III.  Reckless Endangerment

In Count 6, the defendant was found guilty of the reckless endangerment of Tamika Cook and, in Count 8, of the reckless endangerment of Burrell Jones.  A person commits the offense of reckless endangerment "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury."  Tenn. Code Ann. § 39-13-103(a).  Reckless endangerment committed with a deadly weapon is a Class E felony.  Id. § 39-13-103(b).

With regard to Ms. Cook, the proof showed that the defendant drove his truck in such a way that she thought he was going to hit her.  Video from the scene shows the defendant driving in a very erratic and dangerous manner and, at one point, he came quite close to hitting Ms. Cook.  In the light most favorable to the State, the proof shows that Ms. Cook was placed in a reasonable probability of imminent danger of death or serious bodily injury.

With regard to Mr. Jones, the proof showed that the defendant drove through the breezeway of the apartment building and into Mr. Jones's apartment, caving in the wall and knocking Mr. Jones from his chair.  Mr. Jones's wrist and back were injured, and he had to go to the hospital because he went into cardiac "AFib."  Mr. Jones had to stay at the hospital until he was stabilized and his heart went back to normal rhythm.  In the light most favorable to the State, the proof shows that these events placed Mr. Jones in a reasonable probability of imminent danger of death or serious bodily injury.

## IV. Vandalism

In Count 7, the defendant was convicted of vandalism in an amount between $1000 and $10,000. Vandalism is defined as "knowingly caus[ing] damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent[.]" Tenn. Code Ann. § 39-14-408(a). The proof showed that the defendant drove his vehicle through the breezeway of the apartment building, causing notable damage. A current employee of the apartment complex's leasing office testified that it cost around $8,000 to repair the damage done to the apartment building. The defendant fails to offer any argument as to why the testimony of the employee of the apartment complex's leasing office is "too incompetent" to establish the value of the damage to the property. Viewed in the light most favorable to the State, the evidence is sufficient to sustain the defendant's conviction for vandalism.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE